UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FRANK D'ANDREA,                         :
    Petitioner                         :          CIVIL ACTION NO.
                                       :          3:08-cv-554 (JCH)
       v.                         :
                                       :
                                       :
UNITED STATES OF AMERICA,                :
    Respondent                         :          FEBRUARY 2, 2009
                                       :

**RULING RE: PETITIONER'S MOTION
TO VACATE, SET ASIDE, OR CORRECT SENTENCE
PURSUANT TO 28 U.S.C. § 2255 [Doc. No. 1]**

Petitioner Frank D'Andrea moves pursuant to 28 U.S.C. § 2255 to vacate, set

aside, or correct his federal criminal sentence.  D'Andrea argues that his counsel

provided ineffective assistance at sentencing by: (1) failing to challenge inaccurate

information provided to the court at sentencing by the Probation Office and the

government, including in the pre-sentence investigation report (P.S.I.) provided to the

court in advance of sentencing; and (2) failing to investigate allegations made by

D'Andrea and materials provided by D'Andrea to his counsel to substantiate and bring

such a challenge.  D'Andrea argues that he was prejudiced by his counsel's ineffective

assistance because he received a higher sentence and fine than he otherwise would

have received.  D'Andrea also argues that, because his plea agreement incorrectly

advised him that the maximum fine was $10,000, his fine of $75,000 was wrongfully

imposed and must be lowered to $10,000.  D'Andrea explicitly disclaims any challenge

to his "plea or conviction," but seeks resentencing, including a redetermination of his

prison term without reference to certain alleged conduct, the truth of which D'Andrea

disputes, and a lowering of his fine to the $10,000 maximum set forth in the parties' plea agreement.

The government argues that D'Andrea's claims are without merit.  First, the government contends that his claims are barred, because: 1) they are procedurally defaulted as a result of D'Andrea's failure to pursue a direct appeal; 2) D'Andrea specifically waived his right to appeal or mount a collateral attack on his conviction or sentence of imprisonment; and 3) there is no claim that the waiver was not knowingly, voluntarily, and competently made, or that it was made without the effective assistance of counsel.  Second, the government contends that the representation provided by D'Andrea's attorney, Alan Sobol, did not fall below an objective standard of reasonableness and in fact was effective in securing a favorable outcome for D'Andrea. Third, with regard to the fine, the government admits that the parties stipulated to an incorrect statutory maximum, but contends that the agreement properly represented, and D'Andrea was well aware, that the agreement's calculations were not binding on the Probation Office or the court.

## I.    BACKGROUND

On February 1, 2007, D'Andrea pled guilty to Count One of a twelve count indictment.[1]  Count One charged D'Andrea with possession of an unregistered destructive device, in violation of 26 U.S.C. §§ 5841, 5845(a)(8) and (f), 5861(d), and 5871.  In his written plea agreement, D'Andrea stipulated to the following offense conduct:

---

[1]Pursuant to a plea agreement, following sentencing the government dismissed counts two through twelve of the indictment.

> [T]hat on or about April 15, 2005, at Stratford, in the District of Connecticut, the defendant, FRANK D'ANDREA, did knowingly possess a destructive device, namely a 12-gauge Streetsweeper bearing serial number SH4713, and that this firearm was not registered to him in the National Firearms Registration and Transfer Record.  The Government and the defendant further stipulate and agree that the Government would be able to prove the existence of other relevant conduct, including that people bought firearms for other persons, and the defendant knew or should have known that those other persons were prohibited from possessing or purchasing such firearms.

Plea Agreement at 10.  The plea agreement also contained the following paragraph, entitled "Waiver of Right to Appeal or Collaterally Attack Sentence:"

> The defendant acknowledges that under certain circumstances he is entitled to appeal his conviction and sentence.  18 U.S.C. § 3742.  It is specifically agreed that the defendant will not appeal or collaterally attack in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241, the conviction or sentence of imprisonment imposed by the Court, so long as that sentence does not exceed 46 months, a three year term of supervised release and a $10,000 fine, even if the Court reaches a sentencing range permitting such sentence by a Guideline analysis different from that specified above.  The defendant expressly acknowledges that he is knowingly and intelligently waiving his appellate rights.

Id. at 5, ¶ 6.  This court accepted D'Andrea's plea of guilty following a lengthy plea canvas.  The canvas complied with Fed. R. Crim. P. 11, except that with regard to Rule 11(b)(1)(H)'s requirement that the defendant be advised of "any maximum possible penalty, including . . . fine," D'Andrea was incorrectly advised that the maximum fine was $10,000. D'Andrea signed the plea agreement referenced above.

On September 7, 2007, this court sentenced D'Andrea to 42 months imprisonment, to be followed by three years of supervised release, and ordered him to pay a $75,000 fine.  Prior to imposing sentence, the court performed a calculation under the Sentencing Guidelines and determined D'Andrea's applicable offense level to be 33 and his criminal history category to be I.  This level and history category would

3

ordinarily result in a sentence range of 135 to 168 months, which was effectively reduced to 120 months because 120 months is the statutory maximum for the offense for which D'Andrea was sentenced.

The court then considered whether to depart downward from this figure. D'Andrea's attorney, Alan Sobol, had argued for a downward departure in his sentencing memorandum, which included as exhibits letters written by friends and family of D'Andrea on his behalf.  In addition, prior to making its sentencing determination, the court heard orally from Attorney Sobol at length, where he again argued vigorously for a downward departure on D'Andrea's behalf.  The court also heard from family members and friends of D'Andrea, as well as D'Andrea himself. Attorney Sobol and the witnesses emphasized D'Andrea's age, physical condition, charitable acts, good deeds, and military service.  They asked the court to limit its sentence to home confinement or community service, and contended that the objectives of sentencing had been achieved by D'Andrea losing his ability to operate a firearms dealership.

The court then determined D'Andrea's sentence under the statutory guidelines set forth by Congress in 18 U.S.C. § 3553(a) (including the Sentencing Guidelines), and relevant Second Circuit caselaw.  The court took all relevant factors into account and decided upon the sentence ultimately imposed.  The court emphasized at sentencing that it viewed D'Andrea's conduct as extremely serious and necessitating that a term of imprisonment be imposed.  It agreed, however, to depart downward from the pre-departure sentencing range of 120 months to a sentence of 42 months, in light of the sentencing range agreed to by the government and D'Andrea, and D'Andrea's age,

4

health, and life history of hard work.  Sentencing Tr. at 70-72.

D'Andrea's ultimate sentence of 42 months was within the 37-46 month range to which the government and D'Andrea stipulated in the plea agreement.  His fine was $75,000, greater than the $10,000 statutory maximum fine to which the parties stipulated and of which the court advised D'Andrea at the time of his plea.

The court also instructed D'Andrea as to his waiver of his right to appeal in his agreement and that if he believed that he had not waived his right to appeal with knowledge of what he was doing or was coerced to do so, that he could appeal to the Court of Appeals.  The court informed D'Andrea of the ten-day deadline to file a Notice of Appeal.  D'Andrea informed the court that he understood these rights and deadline. Sentencing Tr. at 74.

## II.    DISCUSSION[2]

"Because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." Ciak v. United States, 59 F.3d 296, 301 (2d Cir. 1995) (internal citation omitted).  "As a general rule, relief is available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Napoli v. United States, 32 F.3d 31, 35 (2d Cir. 1994) (internal citations and quotation marks

---

[2]The court construes pro se pleadings using less stringent standards than it applies to those drafted by attorneys.  Haines v. Kerner, 404 U.S. 519 (1972).

omitted).

Petitioner D'Andrea brings this proceeding under section 2255, requesting resentencing.  Section 2255 provides that, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  To determine whether D'Andrea is entitled to an evidentiary hearing on his motion, the court looks "primarily to the affidavit or other evidence proffered in support of the application in order to determine whether, if the evidence should be offered at a hearing, it would be admissible proof entitling the petitioner to relief." LoCascio v. United States, 395 F.3d 51, 57 (2d Cir. 2005) (quoting Dalli v. United States, 491 F.2d 758, 760 (2d Cir. 1974)).  "The petitioner must set forth specific facts which he is in a position to establish by competent evidence." Id. (quoting Dalli, 491 F.2d at 761).

    A.    Procedural Default

The government argues that D'Andrea's claims are procedurally defaulted because he did not bring his claims on direct appeal.  "A motion under § 2255 is not a substitute for an appeal." United States v. Munoz, 143 F.3d 632, 637 (2d Cir.1998). Generally, a petitioner may not present a claim on habeas if he did not properly raise it on direct review.  Reed v. Farley, 512 U.S. 339, 354 (1994).  However, the Supreme Court has determined that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."  Massaro v. United States, 538 U.S. 500, 505-06 (2003).  In

6

fact, section 2255 is the preferred method for bringing a claim of ineffective assistance of counsel because it is "the forum best suited to developing the facts necessary to determining the adequacy of representation . . . ."  Id.  Therefore, to the extent D'Andrea has made out a claim of ineffective assistance of counsel, his Motion will not be dismissed on the grounds of procedural default.

    B.     <u>Waiver of Appeal and Collateral Attack Rights</u>

        The court must next consider whether D'Andrea's explicit waiver of his right to appeal or mount a collateral attack on his sentence precludes him from bringing a challenge to his sentence under section 2255.  "[W]aivers of the right to appeal a sentence, like waivers of constitutional rights, are invalid unless they are voluntary and knowing." <u>United States v. Monzon</u>, 359 F.3d 110, 116 (2d Cir. 2004) (quoting <u>United States v. Ready</u>, 82 F.3d 551, 556 (2d Cir. 1996)).  "Thus, a defendant's promise in a plea agreement to forgo the right to appeal a sentence is not enforceable unless 'the record clearly demonstrates that the waiver was both knowing (in the sense that the defendant fully understood the potential consequences of his waiver) and voluntary." <u>Id.</u> at 116 (quoting <u>Ready</u>, 82 F.3d at 557).  If D'Andrea's counsel rendered ineffective assistance at D'Andrea's Rule 11 hearing during which his plea was taken, then the waiver would not be knowing.  <u>See, e.g.</u>, <u>Ready</u>, 82 F.3d at 556-57.  However, a defendant cannot overcome a valid plea agreement waiver and challenge the correctness of his sentence with the argument that he lacked effective assistance of counsel at sentencing.  <u>See United States v. Djelevic</u>, 161 F.3d 104, 106-07 (2d Cir. 1998).

The court must determine whether an evidentiary hearing is necessary to determine if D'Andrea's waiver was both knowing and voluntary.  The court is not required to hold an evidentiary hearing in every section 2255 proceeding.  Under Rule 4(b) of the Rules Governing Section 2255 Proceedings, the court may examine the record, together with the moving papers and any exhibits or affidavits submitted, and can dismiss the action if it "plainly appears . . . that the moving party is not entitled to relief."  Furthermore, where the district court presided over the proceedings being challenged, it may rely on its own familiarity with the case and deny the motion without a hearing if the court concludes that the claim "lack[s] ... any truly meritorious allegation."  United States v. Aiello, 900 F.2d 528, 534 (2d Cir.1990); see also Polizzi v. United States, 926 F.2d 1311, 1320 (2d Cir. 1991) ("[A] trial judge may rely on his or her own recollections and observations when ruling on a § 2255 motion.").

D'Andrea disclaims any challenge to the waiver in his plea agreement and does not allege that he received ineffective assistance of counsel during the plea proceeding with regard to his waiver of appellate or collateral attack rights.  The court's independent examination of the record reveals that D'Andrea's waiver of appeal and collateral attack rights was knowing and voluntary.  D'Andrea read and signed the plea agreement containing the waiver.  The court orally advised D'Andrea at his plea hearing that he was waiving his right to appeal or collaterally attack his sentence if it fell within the range specified in the plea agreement.  D'Andrea told the court that he understood these rights.  When asked, after being advised of the appeal and collateral attack waiver, if he had any questions about the rights he was giving up by pleading guilty, D'Andrea responded that he did not.  Because the waiver was knowing and voluntary,

8

and D'Andrea does not challenge it, an evidentiary hearing on the question of whether the waiver was knowing and voluntary would serve no purpose in this case.

A plea waiver is to be "scrutinize[d] closely and appl[ied] . . . narrowly," and "strictly against the Government."  Ready, 82 F.3d at 556, 559.  D'Andrea's waiver provided that "the defendant will not appeal or collaterally attack in any proceeding . . . the conviction or sentence of imprisonment imposed by the Court, so long as that sentence does not exceed 46 months, a three year term of supervised release and a $10,000 fine . . . ."  Plea Agreement at 5.  Although D'Andrea's sentence of imprisonment did not exceed 46 months, his fine did exceed $10,000.  D'Andrea, therefore, did not waive his right to appeal the fine imposed.  Because his fine did not comport with the waiver's conditions, the waiver does not preclude him from bringing a collateral attack on his fine under 28 U.S.C. § 2255.[3]

C.   Violation of Rule 11 as to Fine Imposed

The court now turns to the merits of D'Andrea's objection to the fine imposed.  At his change of plea hearing on February 1, 2007, the court advised D'Andrea that he would face a maximum fine of $10,000.  It based this advice upon the plea agreement, which was presumably based upon 26 U.S.C. § 5871, which reads: "Any person who violates or fails to comply with any provision of this chapter shall, upon conviction, be

---

[3]The waiver is phrased conjunctively—that is, by its terms, it applies if the sentence does not exceed 46 months of imprisonment, three years of supervised release, and a $10,000 fine.  It is debatable whether, under the terms of the waiver, the imposition of a fine in excess of $10,000 means that D'Andrea retained his right to appeal only his fine, or whether he also retained his right to appeal his term of imprisonment and supervised release.  Construing the waiver narrowly and strictly against the Government, as Ready requires, would suggest that the entire waiver is a nullity.  However, the court need not resolve this question, because it concludes, infra, at 17-20, that D'Andrea has demonstrated ineffective assistance of counsel with regard to his fine.  Because this demonstration entitles D'Andrea to a full, de novo resentencing, see discussion infra at 20-23, any further questions about whether he waived his right to appeal his sentence of imprisonment are moot.

fined not more than $10,000 . . . .".  However, the alternative fine provision, 18 U.S.C. §

3571, provides that "an individual who has been found guilty of an offense may be fined

not more than the greatest of—(1) the amount specified in the law setting forth the

offense; . . . (3) for a felony, not more than $250,000 . . . ."  The alternative fine

provision applies to laws that "set[] forth an offense" except where those laws "by

specific reference, exempt[] the offense from the applicability of the fine otherwise

applicable under [§ 3571] . . . ."  18 U.S.C. § 3571(e).  The actual maximum fine

applicable to D'Andrea's offense, therefore, is $250,000.  At sentencing, the court

imposed a fine of $75,000.

Because D'Andrea agreed to plead guilty after having been advised that the

maximum fine was $10,000, when in fact the maximum fine was $250,000, the record

clearly establishes that a Rule 11 violation occurred.  See Lucas v. United States, 963

F.2d 8, 12 (2d Cir. 1992) (concluding that a Rule 11 violation occurred when defendant

was not advised of maximum penalty).  Rule 11 violations, if raised on direct appeal,

must be remedied.  See id. at 13 (citing United States v. Khan, 857 F.2d 85 (2d Cir.

1988), modified on reh'g, 869 F.2d 661 (2d Cir. 1989)).  In one such case, the court of

appeals gave the district court a choice between vacating the defendant's conviction

and conducting a new plea colloquy (or trial), or curing the Rule 11 violation by instead

resentencing the defendant in order to eliminate the prejudicial portion of the sentence.

Khan, 869 F.2d at 662; 857 F.2d at 87-88; see also Lucas, 963 F.2d at 13 (describing

Khan's remedy).

A successful challenge to a Rule 11 violation on collateral attack, however,

requires a heightened showing.  See Lucas, 964 F.2d at 12-14.  This showing requires

10

the petitioner to establish that the violation constituted a "constitutional or jurisdictional error," or that it resulted in a "complete miscarriage of justice" or "in a proceeding inconsistent with the rudimentary demands of fair procedure."  Id. at 12-13 (internal citations and quotation marks omitted).  A petitioner should also demonstrate that he was "prejudiced by the violation because he did not understand the consequences of his plea, or that, if he had been properly advised, he would not have pled guilty."  Id.

D'Andrea cannot surmount the high barrier that Lucas requires for granting habeas relief directly for a Rule 11 violation.  The facts in the instant case are very similar to those in Lucas.  Like D'Andrea, Lucas pled guilty without full knowledge of the consequences of his plea.  Id. at 13.  In Lucas, the court of appeals found that because the defendant became aware of the possibility of additional punishment through the review of the presentence report, did not object to the sentence at sentencing, failed to seek to withdraw his plea at sentencing even though he was not explicitly invited by the sentencing judge to do so, failed to pursue a direct appeal, failed to raise the issue in timely motions, and failed to demonstrate any other prejudice, collateral relief was not warranted.  Id. at 14-15.  Similarly, D'Andrea's presentence report indicated the possibility of a higher fine, and neither D'Andrea nor his counsel objected to the fine at sentencing or sought to withdraw his plea.  D'Andrea did not pursue an appeal. Therefore, granting habeas relief for the Rule 11 violation is not warranted under Lucas.

However, unlike the defendant in Lucas, D'Andrea also makes a claim of an ineffective assistance of counsel.  The court will now consider that claim.

11

D.   Ineffective Assistance of Counsel

D'Andrea contends that Attorney Sobol's performance at sentencing was ineffective and resulted in the imposition of a higher sentence of imprisonment and fine than would have resulted from effective performance, thus prejudicing him.  D'Andrea also contends that his fine was wrongfully imposed and that he did not file a direct appeal because his lawyer told him "it would not do any good to file an appeal."  Pet. at 3.  Taking D'Andrea's pro se filing in a generous light, the court will construe this latter argument as follows: Attorney Sobol delivered objectively unreasonable representation by incorrectly advising him that he had no basis to appeal his fine and sentence of imprisonment, which resulted in prejudice because he would otherwise have challenged his fine and sentence on appeal.

The court first addresses the latter argument regarding the failure to appeal D'Andrea's fine.  Because the court's determination does not turn upon matters on which an evidentiary hearing would aid development of the factual record, it declines to hold an evidentiary hearing.

1.   Standard for Claims of Ineffective Assistance of Counsel

a.   Strickland Standard

To prevail on a claim for ineffective assistance of counsel, D'Andrea must satisfy the two-part test set out by the Supreme Court in Strickland v. Washington.  466 U.S. 668 (1984).  Under Strickland, the petitioner must first show that his counsel's representation "fell below an objective standard of reasonableness."  Id. at 688.  Second, the petitioner must show that counsel's deficient performance caused prejudice to the petitioner.  Id. at 694.  To establish prejudice, the defendant "must

12

show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

b.    Failure to Appeal

The Supreme Court and Second Circuit have considered claims of ineffective assistance of counsel arising from the failure to appeal.  On one end of the spectrum, the Supreme Court has reaffirmed on several occasions that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (citing cases).  Prejudice in such situations is presumed, so the defendant need not show that the appeal would have been meritorious. Id. (citing Peguero v. United States, 526 U.S. 23, 28 (1999)); Hernandez v. United States, 202 F.3d 486, 488-89 (2d Cir. 2000).  In the situation in which an attorney files a timely notice of appeal, but fails to perfect an appeal, the Second Circuit has similarly found that counsel's act is objectively unreasonable, and prejudice need not be shown. McHale v. United States, 175 F.3d 115, 119 (2d Cir. 1999).

On the other end of the spectrum, the Supreme Court has explained that where a defendant explicitly directs his attorney not to file an appeal, the defendant cannot later complain that by following the defendant's instructions, his counsel performed deficiently. Flores-Ortega, 528 U.S. at 477 (citing Jones v. Barnes, 463 U.S. 745, 751 (1983)); see also McHale, 175 F.3d at 119 (citing Morales v. United States, 143 F.3d 94, 96 (2d Cir. 1998)) ("[I]n order to show that appellate counsel was constitutionally deficient in not filing an appeal, the petitioner must demonstrate that he asked to have

13

an appeal filed."). At first glance, D'Andrea's claims appear to fall on this latter end of the spectrum, as it is undisputed that D'Andrea, after being advised of his right to appeal, declined to pursue an appeal. However, D'Andrea's complaint is not that Attorney Sobol should have filed a notice of appeal notwithstanding D'Andrea's explicit instructions to the contrary, but rather, that Attorney Sobol's advice regarding the prospects of an appeal was objectively unreasonable and caused prejudice to D'Andrea.

The Supreme Court's decision in Roe v. Flores-Ortega suggests that such claims are cognizable provided that they meet Strickland's high standard. 528 U.S. 470. A lawyer's constitutional duty goes beyond simply informing the defendant of his appellate rights and asking the defendant if he wants to appeal. In Flores-Ortega, the Supreme Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." 528 U.S. at 479. The court explained:

> We employ the term "consult" to convey a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.

Id. at 478. Because counsel has a "constitutionally imposed duty to consult," if counsel delivers objectively unreasonable advice regarding the prospects of an appeal, then counsel acts in an objectively unreasonable manner under Strickland. Simply following

14

the express instructions of a defendant who, after being poorly advised not to appeal, declines to go against his counsel's advice and appeal, cannot discharge counsel's obligation to consult.

With regard to prejudice, Flores-Ortega held that "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." Id. at 484. To flesh out this standard, it looked to the earlier case of Hill v. Lockhart, 474 U.S. 52 (1985). It explained:

> In Hill, we considered an ineffective assistance of counsel claim based on counsel's allegedly deficient advice regarding the consequences of entering a guilty plea. Like the decision whether to appeal, the decision whether to plead guilty (i.e., waive trial) rested with the defendant and, like this case, counsel's advice in Hill might have caused the defendant to forfeit a judicial proceeding to which he was otherwise entitled. We held that to satisfy the prejudice requirement of Strickland, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Flores-Ortega, 528 U.S. at 485 (internal quotation marks and citations omitted). Like the petitioner in Hill, D'Andrea claims objectively unreasonable advice regarding the consequences of taking an important action affecting his case, the decision about which was his to make. D'Andrea claims, as did the petitioner in Hill, that Attorney Sobol's advice "caused him to forfeit a judicial proceeding to which he was otherwise entitled." Id. D'Andrea also claims that, but for Attorney Sobol's objectively unreasonable advice, he would not have declined to exercise his appeal right.

Emphasizing the intertwined nature of the "performance and prejudice prongs" of Strickland, the Court in Flores-Ortega explained that,

> evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination [as to whether the defendant has made the requisite showing of prejudice.] . . . We recognize that the prejudice inquiry we have described is not wholly dissimilar from the inquiry used to determine whether counsel performed deficiently in the first place; specifically, both may be satisfied if the defendant shows nonfrivolous grounds for appeal.

Id. at 485-86 (emphasis added) (citing Hill, 474 U.S. at 59). The Court also conceptualizes prejudice as a showing that, "had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." Id. at 486. D'Andrea attempts to make just such a showing in support of his claims of objectively unreasonable representation and prejudice—that there was a nonfrivolous grounds for appeal and his counsel's advice was unreasonable.

Finally, this court's conclusion that it is proper to apply the Strickland test, rather than conclude that D'Andrea's claim is categorically foreclosed, is supported by the fact that, in cases where the Supreme Court or Second Circuit has considered whether counsel was ineffective for failing to appeal, it has emphasized that courts are to apply the Strickland test. See, e.g., Flores-Ortega, 528 U.S. at 476-77 (holding that Strickland applies to claims "that counsel was constitutionally ineffective for failing to file a notice of appeal"); Garcia v. United States, 278 F.3d 134, 137 (2d Cir. 2002) ("[T]he familiar Strickland standard applies to claims of ineffective assistance of counsel in connection with the failure of trial counsel to pursue an appeal."); Morales v. United States, 143 F.3d 94, 97 (2d Cir. 1998) ("Strickland analysis offers an adequate means for assessing the impact of counsel's failure to file an appeal or to advise the

16

defendant, post-sentencing, of his appellate rights.  A reviewing court is able to gauge

both whether the lawyer's conduct was objectively unreasonable and whether an

appeal would have had a reasonable likelihood of success.").  In accordance with the

Flores-Ortega Court's emphasis that application of the Strickland test turns on "the facts

of the particular case," 528 U.S. at 477, this court will evaluate D'Andrea's claims

according to the Strickland standard and in light of the guidance provided by the

Supreme Court and Second Circuit.

   2.  Fine

     a.  Objective Standard of Reasonableness

   With regard to the fine, Attorney Sobol did not object to the fine at the time of

sentencing.  In fact, the Sentencing Transcript reveals no evidence that the fine was

discussed on the record prior to or following its imposition by the court.  Nor did

Attorney Sobol file an appeal on D'Andrea's behalf challenging the amount of the fine.

   In his Affidavit attached to the government's response to D'Andrea's petition,

Attorney Sobol submits that he did not object to the fine because:

> Pursuant to 18 U.S.C. § 3571, the Court was permitted to fine Mr. D'Andrea up
> to $250,000.00.  Provided the Court fined Mr. D'Andrea within the statutory
> limits, which it did, Mr. D'Andrea had no good faith basis to object to the amount
> of the fine imposed.

Affidavit of Alan J. Sobol, ¶ 13(c).  However, given the existence of a Rule 11 violation,

Attorney Sobol could have argued to the court that it should cure the Rule 11 violation

by imposing a fine of $10,000 or less.[4]

---

[4]Given the Rule 11 violation, Attorney Sobol could also have argued to the court that it should
permit D'Andrea to withdraw his plea.  However, it was not objectively unreasonable for Attorney Sobol to
conclude that seeking to withdraw D'Andrea's plea would have been unwise, insofar as doing so would
have undermined the plea agreement that he negotiated and potentially exposed D'Andrea to a

Furthermore, given Attorney Sobol's belief that D'Andrea had no good faith basis to object to the amount of fine imposed, that belief undoubtedly affected his advice to D'Andrea on whether he should appeal his fine.  This conclusion is corroborated by D'Andrea's representation that Sobol told him that "it would not do any good to file an appeal."  Pet. at 3.  Given the advice as to the maximum penalty given by the court at the change of plea hearing in violation of Rule 11, and the fact that the fine imposed was in excess of the amount specified in the appeal waiver, D'Andrea had more than a colorable claim on appeal as to the fine imposed.

Attorney Sobol's failure to object at sentencing to the fine imposed was objectively unreasonable.  Moreover, in failing to inform D'Andrea that he had a nonfrivolous basis for appeal, Attorney Sobol failed to discharge his constitutionally imposed obligation to consult with the defendant about the prospects of an appeal.  See Flores-Ortega, 528 U.S. at 479.  Accordingly, Attorney Sobol's assistance fell below an objective standard of reasonableness on the fine portion of the sentence.

b.   Prejudice

The court must next consider whether D'Andrea was prejudiced by the representation with regard to the fine imposed.  As Attorney Sobol submits in his affidavit, the court could legally fine D'Andrea up to the statutory maximum fine of $250,000, and D'Andrea was advised in his plea agreement that the court was not bound by the agreement on the fine range.  However, both the plea agreement and the court during the change of plea hearing incorrectly advised D'Andrea that the statutory

significantly greater prison sentence.

maximum fine was $10,000.

Had this court, at sentencing, been advised of the prior Rule 11 violation, it likely would have chosen to avoid the violation by imposing a fine of $10,000. Had D'Andrea appealed the fine imposed, the court of appeals would likely have found a violation of Rule 11(b)(1)(H)'s requirement that the defendant be advised of "any maximum possible penalty, including . . . fine . . . ." See Khan, 857 F.2d at 86-88. In order to avoid the time and expense of further proceedings and to avoid disturbing D'Andrea's conviction, the court of appeals, consistent with the remedy ordered in Khan, would likely have permitted this court to cure the prejudice by reducing D'Andrea's fine to $10,000. See Khan, 869 F.2d at 662 ("If the district court were to elect to strike the offending part of the sentence, Khan would be in the same position in which he would have been had no Rule 11(c) violation occurred, and the time and expense of further proceedings would be avoided."). For the reasons identified by the court of appeals in Khan, this court would, following such a remand, have cured the Rule 11 violation by reducing D'Andrea's fine to $10,000 and would have left the remainder of his judgment of conviction and sentenced undisturbed.

Given the Rule 11 violation, Attorney Sobol's failure to object at sentencing to the imposition of a fine greater than $10,000 caused prejudice to D'Andrea. In addition, Attorney Sobol's advice that an appeal was unwarranted "caused [D'Andrea] to forfeit a judicial proceeding to which he was otherwise entitled." Flores-Ortega, 528 U.S. at 485. Because filing a direct appeal would likely have resulted in the reduction of the amount of fine from $75,000 to $10,000, it is clear that "had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an

19

appeal." <u>Id.</u> at 486.  Accordingly, D'Andrea was prejudiced by his counsel's failure to object to the fine imposed or to appeal the sentence of fine imposed.

3.   <u>Imprisonment</u>

Based upon its review of the sentencing transcript and its own familiarity with the case, the court does not believe that Attorney Sobol's representation fell below an objective standard of reasonableness with regard to D'Andrea's sentence of imprisonment, or that D'Andrea suffered prejudice.  However, because, as the court concludes <u>infra</u>, D'Andrea is entitled to a full, <u>de novo</u> resentencing as a result of having demonstrated ineffective assistance of counsel with regard to the fine imposed, the question of whether he can also demonstrate ineffective assistance of counsel with regard to his sentence of imprisonment is moot.[5]

**III.   REMEDY**

The court has found that D'Andrea's failure to object to or appeal the fine imposed resulted from ineffective assistance of counsel.  The court now turns to the question of the remedy to which D'Andrea is entitled.

A.   <u>Failure to Advise D'Andrea to Appeal his Fine</u>

Section 2255 provides that if the requirements it imposes for relief are met, "the court shall vacate and set the judgment aside and shall discharge the prisoner or

---

[5]At resentencing, D'Andrea will be entitled to argue and present evidence regarding the sentence of imprisonment he should receive, including evidence that he should receive a sentence of imprisonment lower than 42 months.  However, if D'Andrea presents evidence that contradicts the signed Stipulation of Offense Conduct, or D'Andrea's sworn statements at the change of plea hearing, the court must consider the credibility of such evidence and whether D'Andrea's efforts to contradict statements made at the time of his plea requires a finding that he has not accepted responsibility for his offense.  Similarly, if D'Andrea chooses to conduct an evidentiary hearing, the government would be entitled to put on witnesses as well, and the court would then need to determine which testimony to credit.

resentence him or grant a new trial or correct the sentence as may appear appropriate."

28 U.S.C. § 2255(b).  In <u>Garcia v. United States</u>, the Second Circuit found that the

district court had wrongly denied the petitioner's section 2255 motion, because the

petitioner had wrongly been denied the right to a direct appeal.  278 F.3d 134.  It

explained that, where "the petitioner was denied the right to direct appeal, the proper

remedy is to vacate the sentence and remand for resentencing."  <u>Garcia</u>, 278 F.3d at

137 (citing cases).  It told the district court that on remand, it "shall either (1) enter a

new judgment imposing the same sentence in open court with defense counsel present,

or (2) if the district court discerns any useful purpose in further considering the

sentence, resentence the defendant."  <u>Id.</u> at 138 (citing <u>McHale</u>, 175 F.3d at 119-20 &

n.4).  If the court avails itself of the first option, the defendant need not be present.[6]  <u>Id.</u>

In either case, the defendant would then have ten days from the date of the re-entered

judgment to file a notice of appeal under Fed. R. App. P. 10(b)(1).

The court chooses to avail itself of the second option, which is appropriate "if the

district court discerns any useful purpose in further considering the sentence."  <u>See</u>

<u>Garcia</u>, 278 F.3d at 138.  The court undertakes this action for similar reasons to those

cited by the district court in <u>Lucas</u>.  In <u>Lucas</u>, a section 2255 proceeding, the district

court, following <u>Khan</u>, directly excised the prejudicial portion of the sentence.  <u>See</u>

<u>Lucas</u>, 963 F.2d at 10.  Because the court of appeals concluded that the district court

erred "in concluding that there was a violation of constitutional dimension that required

---

[6]<u>Garcia</u>'s citation of <u>McHale</u> appears to constitute adoption of that court's comment, referring to
the practices of other circuits, that "[c]ourts remanding for the entry of a new judgment appear to regard it
as a ministerial act, not a formal resentencing that might require the presence of the defendant."  <u>McHale</u>,
175 F.3d at 119-20 & n.4.

collateral relief," it did not comment on whether the district court's remedy would have been appropriate had it properly found a constitutional violation.  In accordance with the decision in <u>Lucas</u>, this court has concluded that D'Andrea is not entitled to habeas relief for the Rule 11 violation but instead is entitled to the opportunity to file a direct appeal on the basis of the Rule 11 violation.  However, under the procedure outlined in <u>Garcia v. United States</u>, in order to afford the defendant the opportunity to file a direct appeal, the court must vacate the defendant's judgment and sentence and impose a new judgment.  <u>See Garcia</u>, 278 F.3d at 138.

If the district court availed itself of <u>Garcia</u>'s first option and reimposed the same sentence, and was then called upon to cure its Rule 11 violation by the court of appeals in accordance with <u>Khan</u>, this court would choose to correct the violation by lowering D'Andrea's fine to $10,000.  The court's decision to grant D'Andrea's section 2255 motion provides it with jurisdiction to resentence the defendant under 28 U.S.C. § 2255(b) and <u>Garcia v. United States</u>.  In the interests of finality, the court expects to cure its Rule 11 violation by lowering D'Andrea's fine to $10,000 on resentencing,[7] rather than entering a new judgment that further continues the Rule 11 violation and requires awaiting vacatur and remand from the court of appeals.

Because D'Andrea is currently proceeding <u>pro se</u>, the court will ask the Clerk's Office to ascertain whether D'Andrea is eligible for appointed counsel or wishes to retain counsel.  If D'Andrea is eligible and wishes to have counsel appointed, the court

---

[7]In accordance with <u>United States v. Harris</u>, 209 F.3d 156, 162 (2d Cir. 2000) and <u>Soto v. United States</u>, 185 F.3d 48 (2d Cir. 1999), the court must conduct a resentencing <u>de novo</u> of Mr. D'Andrea, rather than limiting its consideration to the fine.

will appoint counsel to represent him at the resentencing proceeding and on any appeal, should he choose to undertake one.

    B.    Failure to Object to the Fine at Sentencing

    Because the court has granted D'Andrea's Motion, any objections to his fine can be adequately addressed at resentencing.  Therefore, the court need not consider what relief, if any, would be appropriate to remedy Attorney Sobol's failure to object during the sentencing proceeding to the fine imposed.

**IV. CONCLUSION**

    For the foregoing reasons, the court GRANTS D'Andrea's Motion to Vacate, Set Aside or Correct Sentence [**Doc. No. 1**].  The conditions of the Judgment signed September 7, 2007, and dated September 12, 2007, including D'Andrea's custody status, will remain in effect pending resentencing.

    The Clerk is directed to forward a copy of the financial affidavit form to D'Andrea. If D'Andrea does not believe he can afford to retain counsel, he should complete and return the form to the Clerk's Office within 30 days, so that counsel may be appointed for him.  If he can afford to retain counsel, the court directs that he retain counsel, and that counsel appear in this action within 30 days.  Once counsel appears, the court will schedule a resentencing.  D'Andrea has the right to be present at resentencing unless he waives that right.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 2nd day of February, 2009.

 /s/ Janet C. Hall_____
Janet C. Hall
United States District Judge